# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

SHAWN M. S.,[1]

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

CASE NO. 3:22-CV-00712-MGG

## OPINION AND ORDER

Plaintiff Shawn M. S. ("Ms. S") seeks judicial review of the Social Security Commissioner's decision denying her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). This Court may enter a ruling based on the parties' consent pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g). For the reasons discussed below, the decision of the Commissioner of the Social Security Administration ("SSA") is reversed and remanded.

## I.   OVERVIEW OF THE CASE

Ms. S applied for DIB on June 15, 2020. In her application, she alleged a disability onset date of June 4, 2020. Ms. S's application was denied initially on October 21, 2020, and upon reconsideration on March 18, 2021. Thereafter, Ms. S filed a written request for hearing received on May 17, 2021. Following a telephone hearing on October 27, 2021, the Administrative Law Judge ("ALJ") issued a decision on December 2, 2021,

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name, middle initial, and last initial only.

which affirmed the SSA's denial of benefits. The ALJ found that Ms. S suffers from the severe impairments of degenerative disc disease; fibromyalgia; neuropathy and obesity. [DE 13 at 18]. The ALJ also found that Ms. S suffers from the non-severe impairments of migraine headaches, depression, and anxiety. [*Id.* at 18-19]. The ALJ determined that none of Ms. S's severe impairments, nor any combination of her impairments, meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [*Id.* at 20]. Further, the ALJ found that Ms. S has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), but with certain additional limitations. [*Id.* at 21]. Given Ms. S was limited to less than the full range of sedentary work, the ALJ determined that she could not perform her past relevant work as an electronic assembler. [*Id.* at 24]. However, considering Ms. S's age, education, work experience, and RFC, the ALJ found there are jobs, including sorter, inspector, final assembler, and assembler, that exist in significant numbers in the national economy that Ms. S can perform. [*Id.* at 24-25]. Based upon these findings, the ALJ denied Ms. S's claim for DIB. [*Id.* at 26].

On July 11, 2022, the Appeals Council denied Ms. S's request for review of the ALJ's unfavorable decision. [DE 13 at 1]. Thereafter, Ms. S commenced this action challenging the decision pursuant to 42 U.S.C. § 405(g).

## II.   DISABILITY STANDARD

In order to qualify for DIB, a claimant must be "disabled" as defined under the Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental

impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner's five-step inquiry in evaluating claims for DIB under the Act includes determinations as to: (1) whether the claimant is doing substantial gainful activity ("SGA"); (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform her past relevant work based upon her RFC; and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 404.1520. The claimant bears the burden of proof at every step except the fifth. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## III.   STANDARD OF REVIEW

The court has the authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 405(g). However, the court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Although "the threshold for such evidentiary sufficiency is not high," substantial evidence still requires "more than a mere scintilla." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001) (internal citation and quotation marks omitted). The deference for the ALJ's decision is lessened where the

ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 708-09 (7th Cir. 2013).

Additionally, an ALJ's decision cannot stand if it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ's decision will lack sufficient evidentiary support and require remand if it is clear that the ALJ "cherry-picked" the record to support a finding of non-disability. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010); *see also Wilson v. Colvin*, 48 F. Supp. 3d 1140, 1147 (N.D. Ill. 2014). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015).

Thus, the question upon judicial review is not whether the claimant is, in fact, disabled, but whether the ALJ used "the correct legal standards and the decision [was] supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2007). When reviewing the Commissioner's findings under Section 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford*, 227 F.3d at 869. Where conflicting evidence allows reasonable minds to reach different conclusions about a

4

claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). If, however, an error of law is committed by the Commissioner, then the "court must reverse the decision regardless of the volume of evidence supporting the factual findings." *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Finally, where it is clear the ALJ's decision would not be overturned by remanding the issue for further consideration, the doctrine of harmless error applies to prevent remand. *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003).

**IV.    ANALYSIS**

Ms. S argues that (a) the ALJ did not evaluate her allegations regarding her subjective symptoms in the manner required by Social Security Ruling ("SSR") 16-3p; and that (b) the ALJ's finding as to the persuasiveness of the opinions provided by Dr. Gupta is predicated on a legally erroneous evaluation of the factors required by the regulations, and his reasoning is inadequate and unsupported by substantial evidence.

**A.    Subjective Symptom Analysis**

Under SSR 16-3p, if a claimant alleges impairment-related symptoms, such as pain, the ALJ must use a two-step process to determine whether the claimant's alleged symptoms are consistent with the evidence in the record. SSR 16-3p; *see also* 20 C.F.R. § 404.1529(a). First, the ALJ must consider whether the existence of a medically determinable impairment could reasonably be expected to produce the alleged symptoms. Then, he must evaluate the intensity and persistence of those symptoms to determine the extent to which they impede the claimant's ability to perform work-related tasks. SSR 16-3p; *see also* 20 C.F.R. § 404.1529(c)(1). When considering the

intensity, persistence, and limiting effects of a claimant's symptoms, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p. "If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record," the ALJ will determine that the individual's symptoms are more likely to reduce her capacities to perform work-related activities, and vice versa. *Id.* Regardless of the conclusion the ALJ arrives at, his decision "must contain specific reasons for the weight given to the individual's symptoms, . . . be consistent with the evidence, [and] be clearly articulated" to allow for subsequent review. *Id.*

### 1.     Logical Bridge

Ms. S argues that by failing to provide a clear articulation of how and why the medical evidence in the record is inconsistent with the subjective symptoms she alleges, the ALJ improperly applied SSR 16-3p, and therefore erred as a matter of law.

In challenging the ALJ's RFC analysis, Ms. S does not dispute the fact that the ALJ discussed evidence related to her degenerative disc disease and fibromyalgia, as well as her testimony about her ability to stand, walk, and sit. Indeed, at step one of the symptoms-evaluation analysis, the ALJ took care in noting allegations of disability due to deteriorating disk disease in her back, arthritis in the entire body, fibromyalgia, and neuropathy in the legs in the initial disability report Ms. S submitted. [DE 13 at 24]. The

6

ALJ added that Ms. S attributed her inability to "feel on her left side" and her pain when walking to neuropathy. [*Id.*]. Considering these relevant facts, the ALJ concluded that Ms. S's medically determinable impairments could reasonably be expected to cause the alleged symptoms.

Then, the ALJ moved on to step two of the SSR 16-3p analysis, evaluating the intensity and persistence of the alleged symptoms to determine the extent to which they impede Ms. S's ability to perform work-related tasks. In doing so, the ALJ devoted a significant portion of the opinion to discussing medical evidence, findings of non-examining consultants, and the opinions of the consultative examiner, Dr. Gupta. [DE 13 at 24-27]. The ALJ first referenced Ms. S's treatment records from North Central Neurosurgery [*Id.* at 242-59] while acknowledging that Ms. S underwent lumbar fusion on January 15, 2019, and noting that a postoperative MRI showed significant improvement leading Ms. S to return to work after the surgery. [*Id.* at 25, 257]. The ALJ also noticed that Ms. S visited the neurosurgeon, complaining of lower back pain radiating down her bilateral lower extremities, beginning in April 2020, a few months before the onset date. [*Id.* at 25, 258]. He further cited the results of the physical exam the neurosurgeon performed on Ms. S., including hypersensitivity to touch over the lateral thighs and the SI joints, positive leg raises (producing pain in the low back), and negative foot drop. [*Id.* at 25, 259]. Ms. S's calf muscle strength was also observed to be a little weaker on the right side than the left, but the nurse practitioner was unsure whether Ms. S produced a good effort during the muscle testing. [*Id.*].

The ALJ found an updated lumbar diagnostic image produced in May 2020 showing degenerative and postoperative changes. [DE 13 at 462]. The diagnostic injection therapy for her sacroiliac back pain offered some relief to her right side. [*Id.* at 465]. The neurosurgeon indicated that Ms. S had not yet returned to work "in spite of being released." [*Id.*]. A few months later, in October 2020, Ms. S complained of lower back pain with radiation to both legs as well as generalized body pain. [*Id.* at 407]. Interestingly, as the ALJ observed, both the neurosurgeons and family care providers documented Ms. S's failure to do prescribed physical therapies and participate in any stretching or exercising program when ordered. [*Id.* at 26, 407, 465].

Next, the ALJ summarized the opinion of the consultative examiner, Dr. Gupta. According to the ALJ, Dr. Gupta reported that Ms. S: (1) was in no painful distress during the consultative examination; (2) exhibited full range of motion in all upper extremities with 5/5 strength in all upper major muscle groups; but (3) presented with pain bilaterally in her hips, legs, and left ankle with only 3/5 strength in both legs, full range of motion in all her lower extremities, and 5/5 strength in all other lower major muscle groups. [*Id.* at 26, 440-41].

In challenging the RFC, Ms. S contends the ALJ made the legal error of providing no logical bridge between the evidence cited by the ALJ and his finding. Without the logical bridge, Ms. S argued, it is "unclear how the ALJ reached his conclusion that the objective evidence was inconsistent with [her] allegations regarding her inability to perform basic work activities." [DE 17 at 10]. Courts have found that as long as the ALJ "identified supporting evidence in the record and built a 'logical bridge' from that

evidence to its conclusion," the reviewing court must affirm. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017) (quoting *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005)); *see also Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). The ALJ need not to provide a "complete written evaluation of every piece of testimony and evidence." *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995) (citing *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam)). But the ALJ cannot merely recite medical evidence without analyzing it. *Craft v. Astrue*, 539 F.3d 668, 677 (7th Cir. 2008). Here, contrary to Ms. S's assertions, the ALJ's discussion of records does build a logical bridge between relevant evidence and his determination that Ms. S's statements concerning the intensity, persistence, and limiting effects of these symptoms are inconsistent with the record.

First, the ALJ clearly articulated the rationale behind his finding. He found Ms. S's allegations were inconsistent with objective medical evidence because much of her regular treatment occurred prior to the alleged onset date. [DE 13 at 25]. Additionally, there were many instances where Ms. S was found to be non-compliant with her doctors' instructions and prescriptions. When determining whether symptom intensity and persistence affect an individual's ability to perform work-related activities, the ALJ will consider her "attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed." SSR 16-3p, 2017 WL 5180304, at *9 (Oct. 25, 2017).

> Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent. In contrast, if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we

may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.

*Id.*

Here, there were many occasions when Ms. S did not follow her doctors' orders in seeking treatment. It was first noted in the April 2020 neurosurgeon notes that she had "poor compliance with physical therapy" and was not participating in any exercise or stretching program. [DE 13 at 259]. In May 2020, the neurosurgery office again indicated that Ms. S did not participate in "any stretching or exercise program, and she . . . failed to attend therapy when ordered." [*Id.* at 465]. Her family doctor also mentioned in her treatment record in October 2020 that she "failed to do physical therapy." [*Id.* at 407]. Despite her doctors' numerous attempts at urging her to do physical therapy to alleviate her pain, Ms. S repeatedly disregarded their advice. Taking account of Ms. S's failure to pursue prescribed treatment, the ALJ found inconsistencies between evidence in the record and the alleged intensity and persistence of Ms. S's symptoms. The ALJ also mentioned that Ms. S stopped taking Savella, a fibromyalgia medication she claimed helped her while acknowledging that cost may have been an issue due to a gap in Ms. S's insurance coverage.[2]

---

[2] The record shows that she lacked health insurance from at least July 2020 through August 2021. [DE 13 at 407, 430, 439, 460]. The ALJ did not question Ms. S at the hearing about her non-compliance or her pain doctor's discontinuation of service due to her uninsured status. ALJs should explore an individual's reasons for not seeking treatment before drawing any inferences about her condition. *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016); *see also Craft*, 539 F.3d at 679. However, Ms. S bears the burden of showing errors in the ALJ's decision. *See Fortenberry v. Berryhill*, No. 3:16CV648-PPS, 2017 WL 5477170, at *6 (N.D. Ind. Nov. 14, 2017). Ms. S did not discuss her insurance gap in her brief, so the Court need not elaborate on this further.

Second, the ALJ was attentive to resolving discrepancies among conflicting medical consultant opinions from the State Agency. Citing evidence such as the "EMG, diagnostic imaging of the lumbar spine, some reports of pain and issues with ambulation, 3/5 muscle strength in the lower extremities and some positive straight leg raising bilaterally," the ALJ found the consultative opinion at the initial level of review unpersuasive because it only limited Ms. S to less than the full range of light work. [DE 13 at 26]. The ALJ found that the evidence in the record, including Ms. S's allegations, supported a more restrictive RFC of less than the full range of sedentary work. [*Id.*]. In reaching his conclusion about Ms. S's RFC, the ALJ identified relevant pieces of evidence and explained how they supported his conclusion. As such, the ALJ built a logical bridge to his conclusion.

Contrary to Ms. S's assertion, a review of the record also shows the ALJ provided a logical bridge between relevant evidence and his finding that Ms. S's symptoms of pain and issues with lower-body ambulation may not be as severe as she alleged. Admittedly, the ALJ could have articulated a more thorough analysis of Ms. S's ambulation issues. Nevertheless, his opinion is not entirely bereft of analysis and was sufficient to allow this Court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott*, 297 F.3d at 595. Therefore, the ALJ supported his conclusion regarding any limitations in ambulation with substantial evidence.

11

## 2.        Intensity, Persistence, and Limiting Effects of Symptoms

Ms. S contends the ALJ erred in not considering other relevant factors listed in SSR 16-3p when evaluating the intensity, persistence, and limiting effects of her symptoms.[3] Specifically, Ms. S argues the ALJ did not properly analyze her testimony on daily activities and failed "to explain the basis for his conclusion that [her] allegations are inconsistent with the evidence of record." [DE 17 at 10-11]. In support, Ms. S cites her hearing testimony alleging she cannot walk more than fifty to a hundred feet before needing to rest; is very unsteady on her feet and requires the use of a cane for balance and support; and needs to elevate her legs four to five times a day. [DE 13 at 44-47]. Ms. S indicates, given her above-stated condition, she is incapable of performing sedentary work because such jobs require the ability to stand and/or walk for about two hours out of an eight-hour workday. Ms. S suggests the ALJ merely gave "lip service" to her testimony and failed to analyze how her limited daily activities would affect her ability to function in a work setting. According to Ms. S, a proper evaluation of her statements by the ALJ would have led him to find her incapable of meeting the physical requirements of sedentary work and would have found her to be disabled.

As affirmed by SSR 16-3p, ALJs consider all evidence from a claimant's medical and nonmedical sources about the effect of symptoms. 20 C.F.R. § 404.1529(c)(1). Factors

---

[3] In her brief, Ms. S challenged the ALJ's "credibility" determination citing SSR 16-3p. [DE 17 at 10]. However, SSR 16-3p explicitly rescinded SSR 96-7p and prohibits ALJs from assessing a claimant's overall character and truthfulness (*i.e.*, a claimant's credibility). SSR 16-3p requires ALJs to consider all evidence when evaluating the intensity and persistence of symptoms and look for consistency of symptoms among various sources in the record. Accordingly, the Court will not reference "credibility," and will discuss only the standard applicable under SSR 16-3p.

considered in assessing the effects of a claimant's symptoms include: daily activities; the location, duration, frequency, and intensity of pain or other symptoms; measures other than treatment an individual uses or has used to relieve pain or other symptoms; and any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. *Id.* § 404.1529(c)(3). "If there is no information in the evidence of record regarding one of the factors, [the ALJ] will not discuss that specific factor . . . because it is not relevant to the case." SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017).

To start, daily activities are descriptions of what a claimant does on a day-to-day basis. *See, e.g.*, *Craft*, 539 F.3d at 673 ("[Claimant] cooked his own meals, walked to the mailbox daily, vacuumed once a week, and occasionally drove . . . ."). Despite alleging that the ALJ did not properly consider her daily activities in assessing her subjective symptoms, Ms. S did not identify any particular evidence about her daily activities that the ALJ did not consider. Instead, Ms. S merely argues that the ALJ failed to evaluate general statements like she "is essentially unable to walk due to pain," and she "sometimes stumbles or becomes off balance due to her neuropathy." [DE 17 at 10]. Ms. S's argument in no way connects these statements on her physical limitations to her daily activities. With nothing more, Ms. S has failed to develop an argument for the Court to consider. *Cf. United States v. Beavers*, 756 F.3d 1044, 1059 (7th Cir. 2014) ("Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived." (quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009))).

Thus, Ms. S has not established that the ALJ committed any legal error in his analysis of her daily activities.

Additionally, the ALJ did not disregard Ms. S's testimony as she alleges. In fact, the ALJ explicitly referenced Ms. S's October 2021 hearing testimony, which included her capacity to "stand for about 20 minutes or so at a time; walk about 50 to 100 feet and sit for up to one hour," her experiences of "generalized pain all over," and her inability to "bend over to pick something up." [DE 13 at 25, 44-47]. Ms. S argues the ALJ merely gave "lip service to these statements." [DE 17 at 10]. Yet, the ALJ accounted for her testimony and the effects of her symptoms on her ability to function in a work setting by incorporating limitations into her RFC, including mandatory use of a medically necessary cane at all times while walking, as well as no balancing, working around unprotected heights, and climbing ladders, ropes, or scaffolds. [DE 13 at 24-25]. Moreover, the ALJ does not need to address every piece of evidence, as long as he provides a "logical bridge" between the evidence and his conclusion. *O'Connor-Spinner*, 627 F.3d at 618 (quoting *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008); *Clifford*, 227 F.3d at 872). Hence, the ALJ may omit minor pieces of evidence in discussing his reasoning.

Even if the ALJ had included every fact included in Ms. S's records in his decision and had explicitly spelled out how each of her alleged symptoms affects her ability to function in a work setting, he was not required to credit the testimony as convincing evidence. SSR 16-3p requires the ALJ to look also at objective medical

evidence when evaluating an individual's statements about the intensity, persistence, and limiting effects of symptoms.

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities . . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities . . . .

SSR 16-3p, 2017 WL 5180304, at *8.

Here, Ms. S cites no other objective evidence, besides her hearing testimony, that corroborates her alleged need to elevate her legs four to five times a day, stand for only about twenty minutes or so at a time, and sit for up to one hour. Ms. S did not even direct the Court's attention to any communications with her medical providers about such effects of her symptoms on her daily life. Information an individual provides to treating physicians may be compared with other statements in the record to evaluate the intensity, persistence, and limiting effects of her symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *7. If Ms. S had conveyed the above-mentioned needs to her physicians during checkups, her treatment records may shed some light on her subjective symptoms. Thus, Ms. S has not shown that the ALJ failed to support his evaluation about the limiting effects of her symptoms with substantial evidence or other otherwise committed any error with regard to her hearing testimony.

**B.      Persuasiveness of Dr. Gupta's Consultative Opinion**

For claims filed after March 27, 2017, such as Ms. S's claim, an ALJ "does not give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The regulations instead require an ALJ to explain "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative findings in [a claimant's] case record." *Id.* § 404.1520c(b). The persuasiveness of a medical source's opinion is based upon analysis of these factors: supportability; consistency; relationship with the claimant—including the length of the treatment relationship, frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; and specialization. *Id.* § 404.1520c(c)(1)–(5). The most important factors when assessing the persuasiveness of a medical opinion are supportability and consistency. *Id.* § 404.1520c(b)(2). Indeed, the ALJ is required to explain how he considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in the decision. *Id.* "Failure to adequately discuss supportability and consistency requires remand." *Willis v. Acting Comm'r of Soc. Sec.*, No. 3:21-cv-178 JD, 2022 WL 2384031, at *3 (N.D. Ind. July 1, 2022) (citing *Tammy M. v. Saul*, No. 2:20CV285, 2021 WL 2451907, at *7 (N.D. Ind. June 16, 2021)).

Dr. Gupta opined Ms. S is unable to perform work-related activities, such as walking or lifting, but is able to sit, stand, carry, and handle objects. [DE 13 at 447]. The ALJ was not persuaded by Dr. Gupta's conclusion. Ms. S contends that the ALJ's

assessment of Dr. Gupta's medical opinion is legally deficient as he failed to address the consistency factor, while summarily rejecting the opinion's finding. More specifically, Ms. S argues the ALJ disregarded numerous pieces of medical evidence that were consistent with Dr. Gupta's opinion. Additionally, Ms. S claims the ALJ's evaluation of the supportability factor is lacking because he failed to explain how Dr. Gupta's opinion is internally inconsistent.

When evaluating the consistency of a medical opinion, the ALJ should bear in mind that "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ must explain how he considered the consistency factor as part of his persuasiveness analysis of a medical opinion. *See id.* Here, within the single paragraph where the ALJ evaluated the persuasiveness of Dr. Gupta's consultative medical opinion, the ALJ simply listed Dr. Gupta's observations during his examination of Ms. S and declared they are inconsistent with Ms. S's supposed inability to do work-related activities such as walking or lifting. [DE 13 at 26-27]. The ALJ neither explained the rationale behind his determination nor compared Dr. Gupta's opinion to any other medical or nonmedical source in the record, which is at odds. with the legal standards for reviewing social security cases. Courts have held general statements that a medical opinion is not consistent with the record are insufficient. *See, e.g., Willis,* 2022 WL 2384031, at *4 (finding that an ALJ's decision stating that medical opinions were either "not consistent with the available medical

evidence summarized above" without describing specific evidence considered required remand); *see also Michael L. v. Saul*, No. 2:20CV238, 2021 WL 1811736, at *11 (N.D. Ind. May 6, 2021) (stating "the ALJ cannot merely summarize the evidence, as a whole, and then conclude that [certain medical] opinions are not consistent with the evidence as a whole. Rather, the ALJ must build a logical analytical bridge explaining what particular evidence undermined [certain medical] opinions and why."). As such, the ALJ here failed to articulate how he considered the consistency of Dr. Gupta's opinion with other evidence in the record. Such an omission constitutes an error of law. *See id.* § 404.1520c(b)(2).

When evaluating the supportability factor, ALJ should take into account that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). Here, Ms. S contends that the ALJ's evaluation of the supportability factor is lacking because he failed to explain how Dr. Gupta's opinion is internally inconsistent. The ALJ discussed the internal consistency of Dr. Gupta's opinion as follows:

> The complete inability to walk or lift is inconsistent with the physical exam conducted by this doctor where he found 5/5 strength and full range of motion in all upper major muscle groups; 3/5 strength in the bilateral legs, but 5/5 strength and full range of motion in all other lower major muscle groups; 5/5 grip strength with good fine finger manipulative abilities and peripheral pulses are palpable at 4/4. Also, it is internally inconsistent to state that claimant is completely unable to walk when walking was performed during the physical exam; and it is internally inconsistent to find that the claimant cannot walk or lift but can

18

carry because carrying an object requires a person to lift it, stand with it, and then walk with it.

[DE 13 at 26-27].

As Ms. S asserts, the "ALJ's logic is hard to follow." [DE 17 at 14]. The ALJ mischaracterized Dr. Gupta's opinion in two instances while attempting to explain why he found the opinion internally inconsistent. First, the ALJ could not reconcile what he perceived to be Dr. Gupta's opinion that Ms. S is completely unable to walk when Dr. Gupta noted that Ms. S was observed walking during the consultative exam. [DE 13 at 27]. Yet Dr. Gupta never concluded Ms. S could not walk at all. Rather, he opined Ms. S is unable to do work-related activities, such as walking or lifting. [*Id.* at 447]. Based on this mischaracterization of Dr. Gupta's opinion, the ALJ did not account for the possibility that Ms. S could both walk briefly during the one-time consultative examination but still be unable to meet the walking demands of a job.

This Court confronted a similar issue in a different case where the ALJ rejected the medical opinion of a consultative examiner by reading the physician's opinion to mean the claimant was completely unable to handle objects, when the physician meant the claimant was unable to handle objects in a way that would be required in a job. *Walls v. Kijakazi*, No. 2:21-cv-68-JPK, 2022 WL 4377379, at *12 (N.D. Ind. Sept. 22, 2022). Ironically, Dr. Gupta was also the consultative examiner in *Walls*. The Court found that the ALJ's "contrary and improbable interpretation of Dr. Gutpa's opinion . . . [was] not supported by a fair reading of the opinion." *Id.* The same is true in Ms. S's case.

19

Second, the ALJ found Dr. Gupta's opinion that Ms. S "cannot walk or lift but can carry" internally inconsistent explaining that "carrying an object requires a person to lift it, stand with it, and then walk with it." [DE 13 at 27]. The ALJ seems convinced that the act of carrying inherently involves lifting and implies that a person cannot claim to have the ability to carry while also lacking the ability to lift. Once again, the ALJ's analysis is grounded in confusing, if not faulty, logic as there are presumably work settings where a person need not lift an object to carry it such as having another person place it in her arms or even slide it off a shelf at waist height.

Having failed to accurately describe Dr. Gupta's opinion about Ms. S's ability to work, the ALJ has not supported his assessment of the supportability factor with substantial evidence. His attempt to distinguish Dr. Gupta's opinion from his observations about her strength, range of motion, and manipulative abilities cannot compensate for those shortcomings because it is based on the same overstatement of Dr. Gupta's opinion.

By failing to properly address the consistency factor and by mischaracterizing Dr. Gupta's opinion in the supportability analysis, the ALJ's evaluation of the persuasiveness of Dr. Gupta's medical opinion is not supported by substantial evidence such that remand is warranted.

**V.    CONCLUSION**

For the above reasons, the case is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C § 405(g).

**SO ORDERED** this 14th day of March 2024.

s/Michael G. Gotsch, Sr.
Michael G. Gotsch, Sr.
United States Magistrate Judge